UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 6: 14-004-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| JAMES WATTS, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant James Watts pleaded guilty on August 1, 2014, to one count of being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). [Record No. 33] He was sentenced to 120 months' imprisonment, the statutory maximum penalty, on January 9, 2015. [Record No. 37] His sentence was later affirmed on appeal. [Record No. 44] Watts has now filed a motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), as well as a request for appointed counsel. [Record Nos. 46, 47] In support, he suggests that the Court balance "the total harm and benefits that his continued imprisonment will yield" in light of the COVID-19 pandemic and he urges that the "unprecedented threat posed by COVID-19" necessitates a sentence reduction. [Record No. 46, p. 5]

**I.**

Before turning the merits, it is necessary to summarize the conduct which led to Watts' conviction and sentence. Watts' criminal history is too lengthy to document in detail here. Prior to his most recent offense, he had thirteen adult convictions for theft, drug-dealing, domestic violence, and lying to law enforcement officers. [Record No. 40, pp. 6-10] The

- 1 -

crime which led to his current conviction occurred on June 24, 2013, when Watts "arrived at the home of Michael Hatfield and Tina Pinney with two pistols" and "hit Hatfield in the back of the head with one of the guns."[1] [*See* Record No. 44, p. 2; *see also* Record No. 40, p. 3.] After bludgeoning Hatfield, Watts pointed one of the guns at him and pulled the trigger. Thankfully, the gun misfired. [Record No. 40, p. 3] The gun again misfired when Watts attempted to shoot Pinney. [*Id.*] After Watts was taken into custody, he attempted to bribe his arresting officers to persuade the officers to release him. [*Id.*]

As noted, Watts later pleaded guilty to the charged conduct. The Court imposed a sentence within the guideline range for Watts' conduct, which was the statutory maximum. [*See* Record No. 40, p. 13.] The undersigned considered Watts' arguments for a downward departure but found that "[n]one of [the 18 U.S.C. § 3553(a)] factors are favorable to the defendant." [Record No. 41, p. 26] For example,

> the defendant's criminal history indicates that he does commit violent offenses when given the opportunity. So, therefore, he does present a danger to the public, and the Court believes that it's needed—it's necessary to impose a term of 120 months to provide not only proper deterrence but sufficient protection of the public. Such a determination would also take into account the other relevant factors, which do include the seriousness of the offense, the need to promote respect for the law in this particular case, which is quite strong, and the need to provide just punishment. I would tend to agree with [the government] as well that perhaps 120 months is not sufficient to do that, but it's the most that is allowed under the statute. And such a sentence would also not create an unwarranted sentencing disparity based upon this defendant's characteristics. So the Court does believe that a term of incarceration at the statutory maximum and the top of the guideline range is needed in this particular case.

[Record No. 46, pp. 26-27] As such, the 120-month sentence was necessary.

---

[1] Pinney is the mother of Watts' then-girlfriend, and Hatfield was Pinney's boyfriend. [Record No. 40, p. 3]

## II.

When a defendant files a motion for compassionate release, the Court considers whether the "three substantive requirements for granting relief" contained in 18 U.S.C. § 3582(c)(1)(A) are satisfied.[2]  *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). They are, whether: (1) " 'extraordinary and compelling reasons' warrant a reduction"; (2) "the reduction is consistent with the applicable policy statements issued by the Sentencing Commission"; and (3) "the § 3553(a) factors, to the extent they apply, support the reduction." *United States v. Brummett*, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020). These findings must be made in order, except that the second step may be skipped where, as here, the motion is filed by a prisoner rather than the Bureau of Prisons. *See United States v. Jones*, No. 20-3701, 2020 WL 6817488, at *7 (6th Cir. Nov. 20, 2020).

### 1.     **Extraordinary and Compelling Reasons**

"Section 3582(c)(1)(A) does not define 'extraordinary and compelling reasons.'" *Ruffin*, 978 F.3d at 1004. Rather, 28 U.S.C. § 994(t) directed the United States Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction." Those descriptions are currently found in Federal Sentencing Guideline § 1B1.13 or, more specifically, in the application notes to that section. However, because the applicable policy statement was adopted when only the Bureau of Prisons was empowered to file a motion under § 3582(c)(1)(A), the Sixth Circuit has held that "the passage of the First

---

[2]     Of course, a motion must be procedurally proper. "[A]n imprisoned person may file a motion for compassionate release after (1) exhausting the BOP's administrative process; or (2) thirty days after the warden received the compassionate release request—whichever is earlier." *Jones*, 2020 WL 6817488, at *4. Watts alleges that he "submitted a reduction in sentence application" to the warden of the Coleman United States Penitentiary in September 2020, but that his request was denied. [Record No. 46, pp. 4-5]

Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release." *Jones*, 2020 WL 6817488, at *7. Thus, the Court is no longer bound by the policy statements, and it has "full discretion . . . to determine whether an 'extraordinary and compelling' reason justifies compassionate release." *Id.*

Nevertheless, the policy statements provide a framework for evaluating a defendant's asserted justifications for a sentence reduction. And, as specifically relevant here, the statements provide detailed criteria to determine whether a "medical condition of the defendant" justifies a reduction, such as where:

> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> (ii) The defendant is—
> > (I) suffering from a serious physical or medical condition,
> > (II) suffering from a serious functional or cognitive impairment, or
> > (III) experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 n. 1(A). The upshot is that, at least as far as the policy statements are concerned, a defendant's medical condition justifies release only when their incarcerated status renders the condition unmanageable, and the prospects of recovery are low.

Watts argues that his current manageable conditions may become unmanageable if he becomes infected with COVID-19. He lists diabetes, hypertension, asthma, obesity, and sleep apnea as part of the "complex web of serious medical challenges indisputably plac[ing] him among those at highest risk of suffering serious complications or death." [*Id.* at pp. 8-9] And because COVID-19 "has been confirmed" at USP Coleman, he alleges that he is "at serious

- 4 -

risk of illness or death." [Record No. 46, p. 5] Watts cites nationwide statistics about the pandemic's spread among incarcerated and non-incarcerated individuals, but notes that "there is only a small percentage" of reported cases at the facility. [*Id.* at pp. 6-7]

This Court has repeatedly held that these are not the kind of concerns that justify compassionate release under the policy statements. *See United States* v. *Jent*, 2020 WL 6829760, at *2 (E.D. Ky. Nov. 20, 2020); *United States v. Brummett*, 2020 WL 6120457, at *2 (E.D. Ky. Oct. 16, 2020); *United States v. Cundiff*, No. 2020 WL 4949692, at *2 (E.D. Ky. Aug. 24, 2020). Further, nothing about Watts' situation indicates that the Court should, in its discretion, recognize an extraordinary and compelling reason for release. Watts has a number of conditions that are routinely treated with minimal medical intervention.[3] He resides in a facility with little documented COVID-19 transmission, and he does not allege that he has been exposed, infected, or displayed symptoms of infection. As such, the Court finds that no extraordinary or compelling reason justifies reducing Watts' sentence.[4]

### 2. The § 3553(a) Factors

Even if the Court found a reason to reduce Watts' sentence based on his medical conditions, a reduction would be wholly inappropriate. "Section 3553(a) blankets a vast terrain of sentencing factors, such as the nature of the offense, the characteristics of the defendant, and numerous penological objectives." *Jones*, 2020 WL 6817488, at *11. The Court has a

---

[3] Watts has not provided documentation in support of his alleged medical conditions. But because the Court concludes that he is not entitled to relief on the merits, additional documentation is unnecessary.

[4] The Court further refuses to find, in its discretion, that Watts' case present an "other reason[]" that would justify release. *See* U.S.S.G. § 1B1.13 n. 1(D); *Jones*, 2020 WL 6817488, at *8. Watts has alleged no unique hardship that would presumably form the basis for such a finding.

duty to "consider all relevant § 3553(a) factors before rendering a compassionate release decision," but it does not have to reweigh the factors where its determination at sentencing remains supported by the "whole record." *Id.* at * 12.

The Court's prior conclusion that none of § 3553(a) factor favor Watts has not changed, and he fails to make any compelling argument that it should. Instead, he takes the opportunity to again argue that the Court's sentence is "greater than necessary to fulfill the statutory purposes of [§ 3553]." [Record No. 46, p. 10] But that argument was rejected by this Court and on appeal. [*See* Record Nos. 41, p. 27; 44, pp. 2-3.]

Watts' arguments aside, the § 3553(a) factors counsel in favor of requiring Watts to serve the balance of his sentence. Accepting his request to balance the harm and benefits of his continued confinement, [Record No. 46, p. 5], the Court concludes that harm overwhelms. Few offenses could weigh more heavily against reducing a sentence than pistol-whipping and attempted murder. 18 U.S.C. § 3553(a)(1). Further, considering both the nature of his conduct and his lengthy criminal history, the need to protect the public from Watts alone is enough to justify the Court's decision. 18 U.S.C. § 3553(a)(2)(C). In fact, the Court continues to doubt whether ten years, let alone the five he has already served, is sufficient to afford adequate deterrence for Watts' prior conduct. 18 U.S.C. § 3553(a)(2)(B). Thus, the 120-month sentence continues to be "sufficient, but not greater than necessary," and these factors do not support a sentence reduction. 18 U.S.C. § 3553(a).

## III.

Finally, appointing counsel is unnecessary for Watts to pursue compassionate release. There is no constitutional right to appointed counsel when it comes to filing motions for relief under 18 U.S.C. § 3582(c). *See United States v. Bruner*, 2017 WL 1060434, at *2 (E.D. Ky.

Mar. 21, 2017) (collecting cases).  The decision of whether to appoint counsel lies within the Court's discretion, and counsel is only required where the interests of justice or due process so require.  *See Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986); *United States v. Bond*, 2016 WL 9343991, at *3 (E.D. Ky. Feb. 12, 2016).  Further, "appointment of counsel is unnecessary where [as here] the issues raised in a § 3582 motion are straightforward and resolvable upon review of the record."  *United States v. Blankenship*, 2020 WL 6111959, at *2 (E.D. Ky. Oct. 16, 2020) (quotation omitted).

Watts has properly presented grounds for relief and supported his motion with a number of statistics and cases from other district courts.  Thus, it is unclear how appointing counsel would increase Watts' chances of success.  Further, where it is clear that a defendant "cannot obtain relief on the grounds stated" in a motion, appointment of counsel is unnecessary.  *United States v. Prater*, 2020 WL 2616120, at *2 (E.D. Ky. May 22, 2020). Accordingly, it is hereby

**ORDERED** as follows:

1. Defendant Watts' motion for compassionate release [Record No. 46] is **DENIED**.

2. Defendant Watts' motion for appointment of counsel [Record No. 47] is **DENIED**.

Dated:  November 24, 2020.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky